UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X   No. _____
PATRICIA HARAN,

                Plaintiff,   **COMPLAINT**

-against-

                **Jury Trial Demanded**

ORANGE BUSINESS SERVICES INC.,

                Defendant.
----------------------------------------------------------------X

Plaintiff PATRICIA HARAN ("Plaintiff" or "Ms. Haran"), by and through her attorneys, FISHER TAUBENFELD LLP, alleges against Defendant ORANGE BUSINESS SERVICES, INC, ("Defendant"):

## NATURE OF THE ACTION

1. This action arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA) and the Administrative Code of the City of New York, § 8-101 *et seq.* ("City Law").

2. With knowledge that Plaintiff would be economically injured, Defendant knowingly and intentionally terminated Plaintiff's employment based on:

    (a)    her familial status as a mother; and

    (b)    her request to exercise her FMLA rights.

Defendant further interfered with and/or restrained or denied Plaintiff's exercise of her FMLA rights.

3. Damages and other legal relief are sought pursuant to City Law and the FMLA.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction

5. Supplemental jurisdiction over Plaintiff's City Law claims is conferred by 28 U.S.C. § 1367(a). Plaintiff was employed by Defendants in the City of New York.

6. Venue is proper in this District because Defendant conducts business in this District and the acts and/or omissions giving rise to the claims alleged herein took place in this district.

**PARTIES**

*Plaintiff*

7. Plaintiff is a New York resident who requested a reasonable accommodation to care for her daughter who suffered from a serious health condition (tumor in femur bone) and to care for her mother who also suffered from a serious health condition (Macular degeneration).

8. Plaintiff has a child and a mother who both suffered from "serious health conditions" as defined by the FMLA because, among other reasons, they received continuing treatment by healthcare providers.

9. Plaintiff was at all times an "eligible employee" within the meaning of the FMLA in that she had been continuously employed by Defendant for more than one (1) year and had worked more than 1,250 hours during the 12 months preceding her leave.

*Defendant*

10. Defendant is a telecom company and a global integrator of communications products and services for multinational corporations.

11. Defendant maintains a principal place of business where Plaintiff worked, at 10 East 40th Street, 31st Floor, New York, NY 10016.

12. At all relevant times, Defendant engaged in commerce or in an industry or activity affecting commerce and employed more than fifty (50) employees for each working day during each of the twenty (20) or more calendar workweeks in the current or preceding calendar year and accordingly is an "employer" within the definition of the FMLA and ADA.

## FACTUAL ALLEGATIONS

### *Background regarding Plaintiff's Employment*

13. In May 2017, Plaintiff began working as a Senior Account Executive with Defendant.

14. In 2020, Plaintiff was promoted to Global Lead Accounts Manager, in which capacity she was responsible for the Pfizer and Moody's accounts

15. Plaintiff's received positive recognition for her work on several occasions, including the "public recognition of outstanding global teaming" award in 2020 and a "Meets and Exceeds Expectations" assessment on her 2019 sales review.

### *The Company's Unlawful Conduct*

16. In or about late September/early October 2020, Ms. Haran's daughter, Julia Haran, was diagnosed with a tumor in her femur bone.

17. Beginning in or about October 2020, Plaintiff requested leave to care for Julia.

18. Ms. Haran informed Sales Director, Adam Kimmick, about Julia's diagnosis and her anticipated need for time off work to care for her daughter.

19. In the coming months, Ms. Haran was required to take intermittent days off work to take Julia to doctor's appointments and for treatment.

20. Between October 15th and 19th, Ms. Haran took time off work to care for Julia, who underwent major surgery and was recovering thereafter.

21. At all times, Ms. Haran apprised Mr. Kimmik of her need for leave and the status of Julia's condition.

22. Mr. Kimmick never informed Ms. Haran of her rights under the FMLA or directed her to speak with someone in Human Resources regarding her rights.

23. On October 23rd, when Ms. Haran met with Michelle Rocco from Human Resources to receive an award for a fundraising event in which she participated, Ms. Haran conveyed to Ms. Rocco her daughter's condition and the potential need for her to take further leave going forward.

24. Ms. Haran explained that Julia might need another surgery, which remained to be determined by her surgeon.

25. Ms. Haran also explained that Julia was being homeschooled while she recovered from surgery for 6 weeks, and that Julia had on-going doctor's appointments and treatment.

26. At no time did Ms. Rocco inform Ms. Haran about her FMLA rights or provide her with FMLA paperwork.

27. Despite the difficulties Ms. Haran was experiencing, she met her revenue quota for the year and was even able to secure an unlikely $2.5 million renewal deal for a network service with Moody's.

28. On January 25, 2021, Ms. Haran met with Mr. Kimmick to discuss her annual performance review. During the review, Mr. Kimmick delivered positive feedback to her but also attributed to her two lost business opportunities, which he used as the basis for giving me her overall rating of "2" (Needs Improvement).

29. Mr. Kimmick had known all along and had discussed several times with her that it would be highly unlikely to win these two accounts.

30. Mr. Kimmick also told Ms. Haran that she had a "lack of focus" in general, referring to her absences and obligations due to her daughter's illness. The "2" rating did not reflect all the positive feedback she received, or the $2.5 million renewal deal she had just secured.

31. On February 8, 2021, Ms. Haran informed Mr. Kimmick that she would need to take a half day off work to take her mother to the eye doctor, as her mother suffered from Macular degeneration. Ms. Haran proceeded to take the half day off as scheduled on February 12th.

### *Plaintiff's Unlawful Termination*

32. Less than two weeks later, on February 24th, Mr. Kimmick and an HR representative, Jennifer Lawson, met with Ms. Haran (virtually) and summarily terminated her employment.

33. Ms. Lawson told Ms. Haran that the reason for her termination was that she did not meet her "number" for 2020.

34. When Ms. Haran retorted that she had, in fact, met her number, Mr. Kimmick jumped in and said, instead, that she was not *expected* to meet her 2021 number. When Ms. Haran explained that she had not even been given her 2021 number as yet, Mr. Kimmick stated simply, "this is what management wanted."

35. The Company did not adjust Ms. Haran's performance standards to take into account her FMLA leave.

36. Based on the foregoing, the Company terminated Ms. Haran in violation of the FMLA.

37. The Company also terminated Ms. Haran based on her familial status as a parent – based on the belief that Ms. Haran was not a reliable employee capable of fulfilling her job responsibilities and meeting her quota because of her familial responsibilities.

## FIRST CAUSE OF ACTION
### (FMLA Interference)

38. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

39. By the acts and practices described herein, Defendant interfered with Plaintiff's FMLA rights.

40. Defendant's violations of Plaintiff's FMLA rights were willful and intentional.

41. As a result of Defendant's unlawful acts, Plaintiff suffered damages, including past and future lost wages and benefits, liquidated damages, and reasonable attorneys' fees and costs of bringing this action.

## SECOND CAUSE OF ACTION
### (FMLA Retaliation)

42. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

43. By the acts and practices described herein, Defendant fired Plaintiff in retaliation for her seeking to exercise her rights pursuant to the FMLA.

44. Defendant's violations of Plaintiff's FMLA rights were willful and intentional.

45. As a proximate result of Defendant's unlawful acts, Plaintiff suffered damages, including past and future lost wages and benefits, liquidated damages, reasonable attorneys' fees and costs of bringing this action.

## THIRD CAUSE OF ACTION
### (Familial Status Discrimination
### Under New York City Human Rights Law)

46. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

47. By the acts and practices described herein, Defendant fired Plaintiff based on the false belief that Ms. Haran is not a reliable employee capable of fulfilling her job responsibilities and meeting her quota due to her responsibilities as a mother.

48. Defendant's violations of Plaintiff's City Law were willful and intentional.

49. As a proximate result of Defendant's unlawful acts, Plaintiff suffered damages, including past and future lost wages and benefits, pain and suffering, emotional distress, punitive damages, reasonable attorneys' fees and costs of bringing this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment awarding Plaintiff:

i. back pay, prejudgment interest, front pay and damages for all employment benefits Plaintiff would have received but for the unlawful acts and practices of Defendant;

ii. punitive damages;

iii. damages for emotional distress and pain and suffering;

iv. liquidated damages;

v. reasonable attorneys' fees and costs incurred in this action; and

vi. any other relief that the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated: New York, New York
December 7, 2021                     Respectfully submitted,

**FISHER TAUBENFELD LLP**

By: _____
Liane Fisher, Esq. (LF5708)
*Attorneys for Plaintiff*
225 Broadway, Suite 1700
New York, New York 10007
Phone: (212) 571-0700
Fax: (212) 505-2001

7