UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA HARAN,

        Plaintiff,

-against-

ORANGE BUSINESS SERVICES INC.,

        Defendants.

Case No.: 21-cv-10585-VSB

**DECLARATION OF PATRICIA HARAN**

PATRICIA HARAN hereby declares the following pursuant to 28 U.S.C. §1746:

1. I am the Plaintiff in the above-captioned action.

2. My daughter, Julia, was 15 years old in October 2020. Julia was diagnosed with a suspected bone tumor for which she would require surgery on October 1, 2020. The need for surgery was exigent and scheduled for October 14, 2020.

3. In October 2020, I informed my manager, Adam Kimmick, that my daughter Julia possibly had a tumor in her femur bone and that she would need surgery, on-going medical treatment, and a long period of recovery and homeschooling. I informed him of my need to take leave to care for my daughter.

4. In late October 2020, I also informed Michelle Rocco, a human resources employee, that my daughter Julia had had surgery, needed on-going medical treatment, and would need a long period of recovery and homeschooling.

5. I also informed both Kimmick and Rocco that my daughter may need further surgery in the future.

6. I began to request occasional leave to care for my daughter in October 2020. Mr. Kimmick and the Defendants' Human Resources departments (a) failed to provide me with any information regarding my FMLA rights, (b) failed to provide me with the necessary FMLA leave forms; (c) failed to provide me with any other FMLA paperwork; (d) failed to refer me to any other individual within the Company who could apprise me of my FMLA rights, and (e) failed to inform me whether my leave could or would be designated as FMLA leave.

7. Before I took leave to care for my daughter, Mr. Kimmick had never criticized me for "lack of focus."

8. My daughter, Julia, was home recovering from surgery from October 15, 2020 to November 18, 2020. I returned to work on October 20, 2020, before my daughter was fully recovered.

9. Julia was on crutches with limited mobility during the period of her recovery. She had a wound that required cleaning and dressing on a daily basis. She needed help showering, going to the bathroom and other day-to-day activities. Julia had to care for herself during this time period, while I worked each day.

10. After informing Mr. Kimmick about Julia's condition and taking intermittent leave to care for Julia, Mr. Kimmick suddenly began subjecting me to heightened scrutiny and pressure.

11. I was intimidated by negative performance feedback I received from Mr. Kimmick, and I avoided taking more time off work while my daughter continued to recuperate, receive treatment, and attend homeschooling.

12. Mr. Kimmick constantly asked me whether I was going to be able to maintain the schedule and pace of conversations with Pfizer given my caregiving obligations.

13. He threatened to take me off the Pfizer account.

14. Mr. Kimmick directed one of my peers, Paul Reticker, to call me to apply pressure as well. After coming home from sleeping at the hospital with my daughter for five nights, I received a call from Mr. Reticker late one evening. Mr. Reticker told me that if I was unable to participate in the upcoming conversations with Pfizer, the account would be transferred to him, per Mr. Kimmick.

15. During this time period, Mr. Kimmick was constantly checking up on me to ascertain the status of my deals, even when he was fully aware of the status.

16. For example, with respect to the Moody's renewal, Mr. Kimmick repeatedly asked me on a day-to-day basis when I was going to get the contract executed by the customer. He was aware that it took time for the deal to finalize, yet he persistently asked me for updates.

17. Mr. Kimmick was responsible as a member of management to facilitate negotiations with clients by encouraging the Company internally to agree to contractual terms with clients.

18. With respect to me, Mr. Kimmick was unwilling to advocate internally to help me finalize the terms of a Master Agreement with Pfizer. Instead, he put pressure on me to get Pfizer to change its position.

19. Conversely, Mr. Kimmick helped my peers, Messrs. Reticker and Renassia, to secure deals by advocating internally on their behalf to get certain unusual contractual terms approved by Orange.

20. If Mr. Kimmick had not subjected me to increased pressure and scrutiny, I would have taken off the time necessary to care for my daughter for the full duration of her recovery.

21. On January 25, 2021, Mr. Kimmick gave me positive feedback during a meeting to discuss my performance in the second half of 2020. He acknowledged that I had secured several

deals, including renewal of a $2.5 million contract, and that I had identified many other promising opportunities that could contribute to my sales going forward.

22. I understood that my performance in 2020 was satisfactory and anticipated that I would be successful in 2021.

23. I was never provided with a sales quota for 2021.

24. I had a plan to increase my 2021 sales pipeline, which I presented to Mr. Kimmick on or about 02/08/2021. During this presentation, Mr. Kimmick did not raise any concerns or doubts about me being able to generate sufficient revenue for the 2021 fiscal year.

25. On or about December 10, 2020, my mother was diagnosed with Macular degeneration which limits her vision.

26. She is under the ongoing care of an eye doctor, requiring regular treatment and visits.

27. Due to her Macular degeneration, my mother is unable to drive at night or navigate unfamiliar settings, such as hospitals and doctor's offices.

28. Since her diagnosis, my mother has been following a regimen of treatment involving several follow-up appointments, including eye injections every 3 months to slow the progression of the disease.

29. On February 8, 2021, I informed Mr. Kimmick that I would need to take a half day off work to take my mother to the eye doctor because my mother suffered from macular degeneration.

30. I took a half day off as scheduled on February 12th.

31. I was terminated on February 24, 2021. To my knowledge, I was the only employee terminated at the time.

32. During my termination meeting, Mr. Kimmick never mentioned anything about my alleged interpersonal issues with clients or coworkers.

Executed on March 26, 2024

_____
PATRICIA HARAN