UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICIA HARAN, <br><br> *Plaintiff,* <br><br> -against- <br><br> ORANGE BUSINESS SERVICES INC., <br><br> *Defendant.* | CASE NO.: 1:21-CV-10585-DEH-JW <br><br> **DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.1 COUNTERSTATEMENT OF FACTS** |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York, Defendant Orange Business Services U.S. Inc.[1] ("Defendant") submits the following response to Plaintiff Patricia Haran's ("Plaintiff's") "Rule 56.1 Counterstatement" (Dkt. No. 72) in connection with Defendant's Motion for Summary Judgment.

## DEFENDANT'S RESPONSE [2]

1.  Plaintiff was employed by Defendant from May 2017 until February 2021, and reported directly to Adam Kimmick throughout that time.  Exhibit A, Kimmick Dep. 26:4-14.

**RESPONSE:  Admit.**

2.  Plaintiff's title when she began working for Defendants [sic] was "senior account manager farmer."  Kimmick Dep. 30:2-6.

**RESPONSE:  Admit.**

---

[1] Plaintiff incorrectly sued "Orange Business Services Inc."  At all relevant times, Orange Business Services U.S., Inc. was Plaintiff's employer.

[2] Despite the directives set forth in Rule 4.f. of the Court's Individual Rules and Practices in Civil Cases, Plaintiff's "Rule 56.1 Counterstatement" began at Paragraph No. 1.

3. In late September or early October 2020, Ms. Haran's 15-year-old daughter, Julia Haran, was diagnosed with a possible tumor in her femur bone. Exhibit B, Plaintiff's Dep. at 74:14-75:2; Plaintiff's Decl. ¶¶ 2, 3, 4.

**RESPONSE: Deny knowledge or information sufficient to form a belief as to the truth of this statement but admit Plaintiff testified that her daughter received this diagnosis in late September or early October 2020.**

4. In October 2020, Plaintiff informed her supervisor, Sales Director Adam Kimmick, about Julia's diagnosis and her anticipated need for time off work to care for her daughter. Kimmick Dep. 63:10-14. Plaintiff's Decl. ¶ 3, 4.

**RESPONSE: Admit.**

5. Kimmick was sufficiently aware of the FMLA to know that "people should have the time and the ability to take time off from work if … required in order to support a family member." Kimmick Dep. 62:3-7.

**RESPONSE: Admit that the quoted deposition testimony is accurate but deny that Kimmick was "sufficiently aware," as Plaintiff did not support that portion of the statement with a citation to any record evidence.**

6. In the coming months, Ms. Haran took intermittent days off work to take Julia to doctor's appointments and for treatment, including a half day on October 14, between October 15th and 19th for major surgery, November 11, December 18, December 28, December 30, and February 12, 2021 (for Plaintiff's mother's appointment). Plaintiff Dep. 109:8-25, Exhibit C, Plaintiff's Responses to Defendant's Interrogatories No. 15.

**RESPONSE: Admit that Plaintiff took off the days identified in this statement.**

7. At all times, Ms. Haran apprised Mr. Kimmick of her need for leave and the status of Julia's condition. Plaintiff's Decl. ¶ 3, 6.

**RESPONSE: Deny. Plaintiff never requested, nor did she take, FMLA leave while employed by Defendant. (Dkt. No. 72 at ¶¶ 63-64).**

8. Plaintiff provided notice of her need for family leave to care for her daughter to Adam Kimmick in clear terms, as he recalled in his deposition: "Q. Did she ever take any time off work to care for a family member? A. I believe so, yes. She asked for paid leave, paid time off. Q. Which family member did she take time off of work to care for? A. I believe it was her daughter." Kimmick deposition, 62:19-25 "Q. Did Patty come to you and ask you if she could take time off work to care for her daughter? A. As I said, yes. I believe she did, yes." Kimmick deposition 63:10-17.

**RESPONSE: Deny. Although Kimmick's cited testimony is accurately stated, it does not support the contention that "Plaintiff provided notice of her need for family leave to care for her daughter to Adam Kimmick in clear terms...." Plaintiff never requested, nor did she ever take, FMLA leave while employed by Defendant. (Dkt. No. 72 ¶¶ 63-64).**

9. Kimmick was aware that Plaintiff's daughter's condition was "severe," "significant," "beyond just a normal injury," and he was aware that she needed medical procedures to be done. Kimmick Dep. 138:18-142:4. However, Kimmick at that time failed to provide Plaintiff with any information regarding her FMLA rights, and did not refer her to the employees of the Company who were equipped to discuss family leave. Kimmick Dep., 64:12-3; Plaintiff's Decl. ¶ 6.

3

**RESPONSE: Admit that Kimmick was aware of Plaintiff's daughter's condition based only on what Plaintiff told him.**

10. On October 23rd, Plaintiff met with Human Resources employee Michelle Rocco to receive an award for her participation in a fundraising event. Exhibit D, Rocco Dep. 16:15-21.

**RESPONSE: Deny and correct that Plaintiff met with Rocco to receive a prize, not an award, and that the referenced meet up took place a pizzeria in Holbrook, NY and not at Defendant's offices or on company time. (Rocco Dep. at 16:15-17:4).**

11. At that time, Plaintiff communicated her daughter's condition to Ms. Rocco along with the potential need for her to take further leave going forward. Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶ 4.

**RESPONSE: Admit that Plaintiff mentioned her daughter's condition to Rocco but deny that Plaintiff communicated "the potential need for her to take further leave going forward." (Pl. Dep. at 48:14-52:4; Rocco Dep. at 17:5-18:9).**

12. Ms. Haran explained that Julia might need another surgery, which remained to be determined by her surgeon. Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶ 4.

**RESPONSE: Admit.**

13. Plaintiff also explained that Julia was being homeschooled while she recovered from surgery for 6 weeks, and that Julia had ongoing doctor's appointments and treatment. Plaintiff Dep. 48:17-52:4; Plaintiff's Decl. ¶ 4.

**RESPONSE: Admit.**

14. At no time did Ms. Rocco inform Ms. Haran about her FMLA rights or provide her with FMLA paperwork. Plaintiff Dep. 48:17-52:4; Rocco Dep. 18:10-13; Plaintiff Decl. ¶ 6.

**RESPONSE:  Admit but clarify that it was not part of Rocco's job to inform Defendant's employees of their FMLA rights or to provide them with FMLA paperwork.  (Rocco Dep. at 19:9-19).**

15.  Plaintiff informed both Michelle Rocco and Mr. Kimmick that her daughter might need additional surgery in the future.  Plaintiff Decl. ¶ 5.

**RESPONSE:  Deny.  Nothing in the evidentiary record supports this statement.  The record confirms only that Plaintiff told Kimmick her daughter needed surgery that would take place on a Wednesday and that Kimmick told Plaintiff to "take whatever time she needed."  (Kimmick Dep. at 144:22-145:8, 142:5-10; Dkt. No. 72 at ¶ 50).**

16.  Plaintiff's daughter, Julia, was home recovering from surgery from October 15, 2020 to November 18, 2020.  Plaintiff Decl. ¶ 8.

**RESPONSE:  Deny.  Nothing in the evidentiary record supports this statement.**

17.  Plaintiff returned to work on October 20, 2020, before her daughter was fully recovered.  Plaintiff Decl. ¶ 8.  Julia was on crutches with limited mobility during the period of her recovery.  Plaintiff Decl. ¶ 9.  She had a wound that required cleaning and dressing on a daily basis, and needed help with showering, going to the bathroom and other day-to-day activities.  Plaintiff Decl. ¶ 9.

**RESPONSE:  Deny.  Nothing in the evidentiary record supports these statements.**

18.  After Plaintiff informed Mr. Kimmick about Julia's condition and began taking intermittent leave to care for Julia, Mr. Kimmick suddenly began subjecting Plaintiff to heightened scrutiny and pressure.  Plaintiff Decl. ¶ 10.

**RESPONSE: Deny. Plaintiff never requested, nor did she ever take, FMLA leave while employed at Defendant. (Dkt. No. 72 at ¶¶ 63-64). Further, Plaintiff testified that she merely "perceived" increased pressure from Kimmick, but her performance expectations did not change at any time. (Dkt. No. 72 at ¶¶ 51-52).**

19. Plaintiff was intimidated by negative performance feedback she received from Mr. Kimmick, and avoided taking more time off work while her daughter continued to recuperate, receive treatment, and attend homeschooling. Plaintiff Decl. ¶ 11.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. In fact, Plaintiff admits that: (i) no one at Defendant made disparaging or negative comments about Plaintiff's daughter's or mother's illnesses; (ii) no one at Defendant made disparaging or negative comments about her taking days off in connection with her daughter's or mother's illnesses; and (iii) Defendant never prohibited Plaintiff from taking any time off due to her daughter's or mother's illnesses. (Dkt. No. 72 at ¶¶ 53-58).**

20. Mr. Kimmick constantly asked Plaintiff whether she was going to be able to maintain the schedule and pace of conversations with one of her accounts, Pfizer, given her caregiving obligations. Plaintiff Decl. ¶ 12.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. Plaintiff testified that Kimmick merely said to her that had she been more focused on developing a relationship with someone at Pfizer, such a relationship could have helped her navigate past the obstacles with securing the Pfizer account. (Pl. Dep. at 41:4-13).**

21. After coming home from sleeping at the hospital with her daughter for five nights, Plaintiff received a call from a peer, Mr. Paul Reticker, late one evening; Mr. Reticker told

6

Plaintiff that if she was unable to participate in the upcoming conversations with Pfizer, the account would be transferred to him, per Mr. Kimmick. Plaintiff Decl. ¶ 14.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. This statement is also rank hearsay. Further, Plaintiff's deposition testimony contradicts this statement because Plaintiff actually testified that Reticker called her at Kimmick's request to let her know that if she needed more time off after her daughter was released from the hospital, Reticker "was able to step in and [ ] handle some of [her] accounts." (Pl. Dep. at 85:10-25). Plaintiff even testified that this conversation was about Kimmick designating Reticker as the person to provide "coverage" for Plaintiff in case she needed more time off. (Pl. Dep. at 103:3-7).**

22. During this time, Mr. Kimmick was constantly checking up on Plaintiff to ascertain the status of her deals, even when he was fully aware of the status. Plaintiff Decl. ¶ 15.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. Plaintiff testified that while employed at Defendant, she had weekly calls/meetings with Kimmick. (Pl. Dep. 38:11-17; Kimmick Dep. 94:18-21).**

23. For example, with respect to a renewal of Plaintiff's account with Moody's, Mr. Kimmick repeatedly asked Plaintiff on a day-to-day basis when she was going to get the contract executed by the customer. Plaintiff Decl. ¶ 16.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. The record confirms that Plaintiff was responsible for the Moody's account and was unable to secure Moody's business going forward. (Kimmick Dep. at 137:2-8, 86:25-87:10).**

24. He was aware that it took time for the deal to finalize, yet he persistently asked Plaintiff for updates.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. The record confirms that Plaintiff was responsible for the Moody's account and was unable to secure Moody's business going forward. (Kimmick Dep. at 137:2-8, 86:25-87:10).**

25. Mr. Kimmick was responsible for facilitating negotiations with clients by encouraging the Company internally to agree to contractual terms with clients. Plaintiff Decl. ¶ 17.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement.**

26. With respect to Plaintiff, Mr. Kimmick was unwilling to advocate internally to help Plaintiff finalize the terms of a Master Agreement with Pfizer; instead, he put pressure on Plaintiff to get Pfizer to change its position. Plaintiff Decl. ¶ 18.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. In fact, the record confirms that Kimmick managed the discussions around the Master Services Agreement with Pfizer while Plaintiff was on vacation in August 2020 and that he was personally involved in assisting Plaintiff with securing the Pfizer business. (Exhibits A & B to the Declaration of Justin A. Guilfoyle, Esq., dated April 19, 2024).**

27. Conversely, Mr. Kimmick helped Plaintiff's peers, Messrs. Reticker and Renassia, to secure deals by advocating internally on their behalf to get certain unusual contractual terms approved by Orange. Plaintiff Decl. ¶ 19.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. When questioned during her deposition about what information Reticker has about her case,**

8

**Plaintiff did not identify anything about this. (Pl. Dep. at 85:7-25). Additionally, in her Interrogatory Responses, Plaintiff did not identify Renassia as an individual with any knowledge about the case and similarly failed to identify Renassia. (Dkt. No. 72 at pp. 395-399 – Plaintiff's Response to Interrogatory No. 1).**

28.     If Mr. Kimmick had not subjected Plaintiff to increased pressure and scrutiny, Plaintiff would have taken off the time necessary to care for her daughter for the full duration of her recovery. Plaintiff Decl. ¶ 20.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. In fact, Plaintiff testified that she merely "perceived" increased pressure from Kimmick, but her performance expectations did not change at any time. (Dkt. No. 72 at ¶¶ 51-52). Additionally, Plaintiff admits that she was never prohibited from taking any time off due to her daughter's or mother's illnesses. (Dkt. No. 72 at ¶¶ 57-58).**

29.     Despite the personal difficulties Plaintiff was experiencing, she met her revenue quota for the year in 2020, and at the end of June 2020 she received a performance review rating her "fully successful." Kimmick Dep. 111:19-22, 88:11-23.

**RESPONSE: Deny but admit that Plaintiff met her revenue quota and received a "fully successful" rating for her first half 2020 performance evaluation.**

30.     In January 2021, Ms. Haran met with Mr. Kimmick to discuss her performance review for the second half of 2020. Kimmick Dep. 90:4-92:10.

**RESPONSE: Admit.**

31.     In 2020, Plaintiff had achieved 100.58% of her revenue goal and managed both her old territory and new territory while a new employee was being onboarded. Kimmick Dep. 111:15-22, 115:4-7.

**RESPONSE: Admit but clarify that Plaintiff only managed both territories <u>for a period of time</u> in 2020 while the new hire was coming in during the COVID-19 pandemic. (Kimmick Dep. at 115:4-11).**

32.     Mr. Kimmick recognized that Plaintiff "stepped up to take … a series of responsibilities that helped [him] and the business" over the course of [2020]. Kimmick Dep. 126:16-19.

**RESPONSE: Deny and correct that Kimmick's deposition testimony was that "Patty had stepped up to take on[] a series of responsibilities that helped me and the business, I paid her for that." (Kimmick Dep. at 126:16-19).**

33.     During the review, Mr. Kimmick delivered positive feedback to her but also attributed two lost business opportunities to her, which he used as the basis for giving her an overall rating of "2" (Needs Improvement). See Exhibit E, Plaintiff's December 2020 Performance Review; Kimmick Dep. 90:12-15.

**RESPONSE: Deny. Nothing cited by Plaintiff supports the statement that these two lost business opportunities were used as the basis for giving her an overall rating of Needs Improvement. Plaintiff's second half 2020 Performance Evaluation speaks for itself. (Dkt. No. 67-9; Dkt. No. 72 at ¶¶ 26-35).**

34.     Mr. Kimmick had known and had discussed several times with Plaintiff that it would be highly unlikely that Defendant would successfully retain these two accounts. See

Exhibit E, page 9, where Mr. Kimmick stated that "the largest A-end accounts ... have made decisions to move away from Orange products and services. These decisions were being fomented before Patty took on responsibility for managing the accounts. And in the case of Pfizer, Orange was unable to accept some onerous contract terms." See Exhibit E.

**RESPONSE: Admit in part and deny in part. Nothing cited by Plaintiff supports the statement that "Mr. Kimmick had known and had discussed several times with Plaintiff that it would be highly unlikely that Defendant would successfully retain these two accounts."**

35. In the same performance review meeting, Mr. Kimmick also told Ms. Haran that she had a "lack of focus" in general, which Plaintiff interpreted as referring to her absences and obligations due to her daughter's illness. Plaintiff's Dep. 39:17-41:20.

**RESPONSE: Admit in part and deny in part. Nothing cited by Plaintiff supports the statement regarding Plaintiff's interpretation of Kimmick's comment. In fact, Kimmick has no recollection of telling Plaintiff that she had a lack of focus. (Kimmick Dep. at 65:10-12). Nonetheless, Plaintiff admitted that she did in fact have a lack of focus during this time. (Dkt. No. 72 at ¶ 32).**

36. Plaintiff had never received this feedback from Mr. Kimmick before. Plaintiff Decl. ¶ 7. Plaintiff brought up the time she had taken off to support her daughter and the two spoke explicitly about the connection between Plaintiff taking time off and her lack of "focus" on work. Plaintiff's Dep. 38:6-43:23.

**RESPONSE: Admit in part and deny in part. Nothing cited by Plaintiff supports the statement that "the two spoke explicitly about the connection between Plaintiff taking**

11

time off and her lack of 'focus' on work." In fact, Plaintiff's deposition testimony is entirely devoid of anything about Kimmick connecting Plaintiff's handful of days off to her alleged "lack of focus." (Pl. Dep. 38:1-43:23). Additionally, Kimmick has no recollection of telling Plaintiff that she had a lack of focus. (Kimmick Dep. at 65:10-12). Nonetheless, Plaintiff admitted that she did in fact have a lack of focus during this time. (Dkt. No. 72 at ¶ 32).

37. The "2" rating on Plaintiff's performance review did not reflect all the positive feedback she received, or the large renewal deal he had just congratulated her for making. See Exhibit F, Moody's Renewal Email; Plaintiff's Decl. ¶ 24.

**RESPONSE:** Deny. Neither Exhibit F nor Paragraph 24 of Plaintiff's Summary Judgment Declaration have anything to do with this statement. Nonetheless, Plaintiff's second half 2020 Performance Evaluation speaks for itself. (Dkt. No. 67-9; Dkt. No. 72 at ¶¶ 26-35).

38. This review left Plaintiff so uncertain of her future at the Company that she mentioned to a coworker that "things are intense" and that she was "not sure how safe I am." Exhibit G, Instant Messages with Peter Singh. In or around January or February 2021, Plaintiff presented Mr. Kimmick with a proposed plan for improving her deal pipeline for the following year. Kimmick Dep. 92:23-93:6; Plaintiffs' Decl. ¶ 27.

**RESPONSE:** Admit in part and deny in part. Nothing cited by Plaintiff supports the statement about the effect Plaintiff's second half 2020 Performance Evaluation had on her, and the cited instant messages with Singh do not even mention a performance review or Kimmick. (Dkt. No. 72 at pp. 470-473). Additionally, Kimmick explained that the plan Plaintiff presented was "ineffective." (Kimmick Dep. at 92:23-93:15).

**Additionally, Paragraph 27 of Plaintiff's Summary Judgment Declaration has nothing to do with this statement.**

39. Plaintiff had a viable plan to increase her sales pipeline for 2021, which she presented to Mr. Kimmick on or about February 8, approximately two weeks prior to her termination. Plaintiff Decl. ¶ 27.

**RESPONSE: Deny. Paragraph 27 of Plaintiff's Summary Judgment Declaration has nothing to do with this statement. Nonetheless, Kimmick explained that the plan Plaintiff presented was "ineffective." (Kimmick Dep. at 92:23-93:15). Additionally, Paragraph 38 above claims that Plaintiff presented the plan "in or around January or February of 2021" and now claims that it took place on "February 8."**

40. During that presentation, Mr. Kimmick did not raise any concerns about Plaintiff being able to general satisfactory revenue for the 2021 fiscal year. Plaintiff Decl. ¶ 27.

**RESPONSE: Deny. Paragraph 27 of Plaintiff's Summary Judgment Declaration has nothing to do with this statement. Nonetheless, Kimmick explained that the plan Plaintiff presented was "ineffective." (Kimmick Dep. at 92:23-93:15).**

41. On February 8, 2021, Ms. Haran informed Mr. Kimmick that she would need to take a half day off work to take her mother to the eye doctor. Plaintiff's Dep. 106:21-107:5.

**RESPONSE: Deny. Nothing cited by Plaintiff supports this statement. Rather, Plaintiff's deposition testimony merely confirms that Defendant did not prohibit Plaintiff from taking any time off to take her mother to the doctor and that Plaintiff used PTO for such time. (Pl. Dep. at 106:21-107:5; Dkt. No. 72 at ¶¶ 58 & 60).**

42. On or about December 10, 2020, Plaintiff's mother was diagnosed with Macular degeneration, which limits her vision and requires ongoing care by an eye doctor, requiring regular treatment and visits. Plaintiff Decl. ¶ 28-32.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement. Additionally, Paragraphs 29 through 32 of Plaintiff's Summary Judgment Declaration have nothing to do with this statement.**

43. Due to her Macular degeneration, Plaintiff's mother is unable to drive at night or navigate unfamiliar settings, such as hospitals and doctor's offices. Plaintiff Decl. ¶ 28-32. Since her diagnosis, Plaintiff's mother has been following a regimen of treatment involving several follow-up appointments, including eye injections every 3 months to slow the progression of the disease. Plaintiff Decl. ¶ 28-32.

**RESPONSE: Deny. Nothing in the evidentiary record supports these statements. Additionally, Paragraphs 29 through 32 have nothing to do with these statements. Further, Plaintiff's correspondence with Singh about getting together when Plaintiff drops her mom off at the doctor belies the statement regarding Plaintiff's mother's inability to navigate doctor's offices. (Dkt. Nos. 67-11 and 67-12).**

44. Ms. Haran proceeded to take time off as scheduled on February 12. See Exhibit C, No. 15.

**RESPONSE: Deny and correct that Plaintiff took PTO on February 12, 2021. (Dkt. No. 67-14 at p. 4).**

14

45. Less than two weeks later, on February 24, 2021, Mr. Kimmick and an HR representative, Jennifer Lawson, met with Ms. Haran virtually and summarily terminated her employment. Plaintiff Dep. 53:13-16.

**RESPONSE: Admit that Plaintiff's employment was terminated on February 24, 2021 during a meeting with Plaintiff, Kimmick, and Lawson but note that the deposition testimony cited by Plaintiff does not support this statement. (Dkt. No. 72 at ¶¶ 38-39).**

46. Ms. Lawson told Ms. Haran that the reason for her termination was that she did not meet her "number" for 2020. Plaintiff Dep. 54:20-55:90 [sic].

**RESPONSE: Deny. Plaintiff's deposition testimony confirms that Plaintiff did not recall exactly what Lawson said, said not to "quote [her]" about Lawson's comment, claimed "maybe" it was her sales achievement, and that she "d[idn't] know how she said it." (Pl. Dep. 54:13-55:15).**

47. However, Plaintiff had met her goal number for 2020. Kimmick Dep. 111:19-22, 88:11-23.

**RESPONSE: Deny. Kimmick's testimony addresses only Plaintiff's "revenue goal" for 2020 and not about a "goal number." (Kimmick Dep. 111:19-22, 88:11-23).**

48. Mr. Kimmick jumped in and said, instead, that she was being terminated because she was not expected to meet her 2021 number. Plaintiff Dep. 55:9-15.

**RESPONSE: Admit in part and deny in part. Kimmick made the decision to terminate Plaintiff's employment due to her lack of performance, specifically, her inability to produce enough sales pipeline for the business to be healthy in the future, the insufficient**

15

**velocity for opportunities already in the pipeline, and the interpersonal issues Plaintiff had with Defendant's clients and employees.  (Dkt. No. 72 at ¶ 41).**

49. Ms. Haran protested that she had not yet been given her 2021 number.  Plaintiff Dep. 55:13-15; Plaintiff Decl. ¶ 26.

**RESPONSE:  Admit in part and deny in part.  Plaintiff's deposition testimony merely states: "But as I had mentioned earlier I did not get a quota, and I said this to him in that conversation, I was never given a quota for 2021."  (Pl. Dep. at 55:12-15).  Additionally, Paragraph 26 of Plaintiff's Summary Judgment Declaration has nothing to do with this statement.**

50. During Plaintiff's termination meeting, Mr. Kimmick never mentioned anything about alleged interpersonal issues with clients or coworkers.  Plaintiff Decl. ¶ 35.

**RESPONSE:  Deny.  Nothing in the evidentiary record supports this statement, and Plaintiff's Summary Judgment Declaration does not even contain a Paragraph 35. Nonetheless, Plaintiff did not deny that Kimmick was aware of Plaintiff's interpersonal shortcomings and informed her of same in performance evaluations.  (Dkt. No. 72 at ¶¶ 23-25).**

51. After this termination meeting, Plaintiff instant messaged a coworker saying: "[I] feel that due to my daughter's illness in Q4 that I should have taken family medical leave off but I didn't want to let the company down."  Exhibit H, Instant Messages with Xavier Pichon.

**RESPONSE:  Admit and note that in that same instant messaging exchange, Plaintiff confirmed that her employment was terminated because her "module [pipeline] did not have enough business to support [her] salary."  (Dkt. No. 67-13).**

16

52. To Plaintiff's knowledge, she was the only employee terminated at that time. Plaintiff Decl. ¶ 34.

**RESPONSE: Deny. Nothing in the evidentiary record supports this statement, and Plaintiff's Summary Judgment Declaration does not even contain a Paragraph 34. Nonetheless, Plaintiff admitted that Kimmick terminated several other employees during the course of her employment at Defendant. (Dkt. No. 72 at ¶ 47).**

Dated: April 19, 2024
       New York, New York

**BAKER & HOSTETLER LLP**

/ s /   *Justin A. Guilfoyle*
Amy J. Traub
Justin A. Guilfoyle
45 Rockefeller Plaza, 14th Floor
New York, New York 10111
Tel: 212 589-4200
Fax: 212 589-4201
Email: atraub@bakerlaw.com
Email: jguilfoyle@bakerlaw.com

*Attorneys for Defendant*
*Orange Business Services U.S. Inc.*